IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENA M.,[1]

Plaintiff,

v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civ. No. 2:19-cv-1362-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff, proceeding *pro se*, brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits.[2] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On March 11, 2016, Plaintiff filed an application for benefits, alleging disability as of December 11, 2011. Tr. 15.[3] Plaintiff had to establish disability as of December 31, 2016, her date last insured. After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 15-24. Plaintiff argues the ALJ erred in not finding Plaintiff met the listing for disorders of the spine and not finding Plaintiff suffered from

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] Although Plaintiff now proceeds *pro se*, she was represented by counsel throughout the administrative proceedings.
[3] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

fibromyalgia, in rejecting certain opinion evidence, and in concluding that she was not disabled as of her date last insured. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC),

age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease/lumbago without myelopathy; left shoulder labral tear repaired with arthroscopy; diverticulosis; obesity; and polysubstance abuse. Tr. 17. The ALJ determined that despite Plaintiff's impairments, she was capable of performing sedentary work with the following relevant limitations: that Plaintiff could lift/carry 10 pounds occasionally and less than 10 pounds frequently; she could sit about six hours and stand/walk about two hours during an eight-hour workday; and that she could occasionally reach overhead with her non-dominant left upper extremity. Tr. 18.

The ALJ determined that although Plaintiff testified to severe limitations during the September 2018 hearing, that testimony reflected her current condition and not her condition during the relevant time period that ended nearly two years earlier. Tr. 19. In weighing the medical opinions, the ALJ gave great weight to the opinion of Dr. Ghazi, an orthopedic surgeon who testified during the hearing. Tr. 20. These findings are supported by substantial evidence in the record.

Plaintiff testified to "constant pain that . . . It's in my arms; it's in my legs; it's in my back; it's in my—oh, my rib area and my pelvis and it's the body throughout." Tr. 51. Plaintiff estimated that after the 70-mile drive to the hearing, she would have "a flare" that would make her bedridden for three or four days. Tr. 51. Even 10 minutes sitting or standing results in

increased pain and "put[s] me in a flare." Tr. 51. The only time Plaintiff was not in pain during the day was "Maybe if I'm in the bathtub." Tr. 51. "It's all together and one big pain, numb/tingling, oh, sometimes feeling like I'm going to fall. There's fainting spells, off balance." Tr. 52. Plaintiff stated she experienced this pain "Since 2014." Tr. 52. Plaintiff had to lay down most of the time and had to take a nap every day. Tr. 54. She was forgetful and the pain prevents her from focusing or concentrating. Tr. 55. At the time of the hearing, Plaintiff was smoking marijuana for her pain and taking Tramadol "for breakthrough pain." Tr. 55-56.

The ALJ found Plaintiff's testimony at the hearing conflicted with the medical records during the relevant time period. For instance, "In evaluating the claimant's spine impairments, the undersigned has considered that the claimant received minimal treatment for her back pain and related symptoms, including that the claimant did not engage in any physical therapy other than receiving therapeutic exercises from her primary care provider[.]" Tr. 21. The ALJ also noted that the significant gaps in treatment during the time period at issue indicated Plaintiff was not as severely limited during that time period (when compared to her testimony during the hearing). Tr. 20-21. These findings are supported by substantial evidence in the record.

As noted, Plaintiff's alleged onset date was December 11, 2011. One year earlier, Plaintiff presented with blisters after walking 10 miles. Tr. 325. Six months later, Plaintiff had a normal examination with no complaints of pain. Tr. 327. In June 2011, Plaintiff complaint of chest tightness, but reported no other pain and was able to get walk and get on and off the examination table. Tr. 331, 334. "Her exam today is completely normal, with the exception of minimal evidence of allergic rhinitis." Tr. 334. Although Plaintiff sprained her ankle in September 2011, she reported no back pain at that time. Tr. 340.

Plaintiff next presented for shoulder pain in January 2012 following a motor vehicle accident earlier that month. Tr. 484. In April 2012, Plaintiff's left shoulder pain was 10/10 and she could not sleep due to left arm pain. Tr. 486. Although Plaintiff complained of neck pain, her doctor noted, "Normal spinal alignment and signal are present. There is minimal broad-based disc building at C5-C6 and C6-C7, without apparent neural compromise. The remaining cervical levels appear normal. The soft tissues of the neck are within normal limits." Tr. 434. Shoulder surgery in May 2012 appeared to remedy Plaintiff's pain. See Tr. 491 (surgery follow up note stating "She is feeling well, having not much pain[.]"). Three months later, she "Has no pain other than an occasional ache[.]" Tr. 359. Plaintiff had full range of motion and strength, "Excellent result from labral repair . . . She can resume unrestricted activity and be discharged from care." Tr. 359. Up to this point, there are no indications in the treatment notes indicating Plaintiff was limited by, or even suffering from, lower back pain.

Plaintiff's next treatment note related to her disability claim comes nearly one year later, when Plaintiff presented on April 26, 2013 with left shoulder pain at 10/10 level.[4] Tr. 500. Although Plaintiff reported no back pain at that time, her shoulder pain had flared up. Tr. 501. X-rays indicate "Three view cervical spine series demonstrates normal vertebral body height and alignment. The disc spaces are preserved. The prevertebral soft tissue space is within normal limits and odontoid is intact. No acute or significant chronic abnormality is seen. IMPRESSION: NEGATIVE CERVICAL SPINE." Tr. 530. In early May 2013, Plaintiff again reported back pain during a follow up for her shoulder. Tr. 506.

---

[4] During that gap, Plaintiff had two visits to her doctor. In December 2012, she presented with left shoulder and hand pain after "altercation with another female. Patient fell backward against a partition striking her left" shoulder and hand. Tr. 496. In April 2013, Plaintiff had a well woman exam and the treatment notes do not mention back or shoulder pain. Tr. 498.

In June 2013, Plaintiff presented with shoulder pain at an 8/10 level. Tr. 353. She had normal reflexes and strength and sensation, but hypersensitivity of the skin in her shoulder. Tr. 355. Dr. Hutson diagnosed "left rotator cuff tendonitis and fibromyositis cervical region." Tr. 356. Dr. Hutson recommended additional time for the shoulder to heal, physical therapy, or home exercises. When Plaintiff declined physical therapy, Dr. Hutson noted Plaintiff would instead continue with home exercises. Tr. 356.

Plaintiff then went over one year without seeing a doctor.[5] In September 2014, Plaintiff presented with lower back pain sustained while "horsing around" on the river. Tr. 613. One month later, Plaintiff presented for a "Routine 'establish care' appt. Pt. has no acute issues." Tr. 609. The doctor demonstrated lower back pain stretching exercises. Tr. 610.

Treatment notes demonstrate another gap in care of over one year. In January 2016, Plaintiff presented and stated she was concerned she might have multiple sclerosis.[6] Tr. 509. "Last year was unable to walk. Has pain. has muscle weakness." Tr. 509. That said, Plaintiff had a "Normal exam" with normal gait, 5/5 strength, and normal sensation. Tr. 511.

One month later, a MRI indicated Plaintiff had a Tarlov cyst at L2. Tr. 349. There was no neural compromise or neural foraminal narrowing, tr. 345, although Plaintiff had moderate central canal stenosis at L3-L4 and L4-L5 from disc bulge, tr. 349. At a follow up, Plaintiff complained of intermittent back pain with intermittent dysethesias in her right leg. Tr. 519. Her doctor again recommended exercise and stretching, noting they could attempt injections if Plaintiff had more pain. Tr. 521.

---

[5] The only note during this time is a July 2013 wound infection with no mention of any shoulder or back pain. Tr. 410.

[6] In other words, the ALJ pointed out that Plaintiff had a nearly three-year gap in treatment (other than one visit where she hurt her back "horsing around"), with no visits indicating Plaintiff suffered from significant back pain.

Plaintiff went several months before complaining again of dizziness and weakness on her right side. Tr. 550. Then, one month before her date last insured, Plaintiff complained of "chronic back pain with fluctuation of severity and radicular symptoms." Tr. 561. Plaintiff also complained of chronic fatigue. Tr. 561. A December 2016 MRI revealed mild spinal canal narrowing from mild disc protrusions. Tr. 557. Disc protrusion at T7-T8 was causing anterior cord flattening. "No abnormal signal of the thoracic spinal cord. No abnormal intrathecal enhancement." Tr. 557. "No significant neural foraminal narrowing." Tr. 560.

The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.
>
> *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir.2007).

When formulating Plaintiff's RFC, the ALJ did not err in noting: Plaintiff's intermittent complaints of lower back pain during the time period at issue; the multiple, significant gaps in treatment during the time period Plaintiff alleges she was disabled; the conservative treatment consisting of stretching or physical therapy to treat Plaintiff's pain; and inconsistencies between the objective imaging results and Plaintiff's own testimony. *Id.* Additionally, the ALJ did not find that Plaintiff was not limited. Rather, the ALJ evaluated the record-as-a-whole and determined that despite her impairments, Plaintiff was able to perform sedentary work with additional limitations. Tr. 18-23.

The record supports the ALJ's conclusion that Plaintiff's symptoms were consistent with her RFC, and only worsened well after her date last insured. Although Plaintiff argues another

interpretation of the record is reasonable—i.e., that she was disabled as of December 31, 2016—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)).

As noted, the ALJ gave great weight to the opinion of the testifying physician, orthopedic surgeon Dr. Ghazi. Tr. 19-20. This too is supported by substantial evidence in the record. Dr. Ghazi noted that "even with the bulging of the discs and simple canal stenosis, she does not demonstrate any neurological deficits in the lower extremities." Tr. 40. He opined:

> So, overall, my impression is that the lady is having some lumbago, muscular ligamentous strain and the chronic back pain without myelopathy because I've seen no evidence of any neurological deficits with the lower extremities. So this would impose some restriction on the residual functional capacity, meaning bending/stooping repeatedly would be painful, so that should be occasional. She can sit for six hours and walk—stand and walk for four hours with appropriate breaks.

Tr. 41.

When compared against the treatment notes during the time period at issue, which the ALJ discussed in great detail, it was reasonable for the ALJ to accept Dr. Ghazi's opinion as to Plaintiff's limitations. Although Plaintiff argues the ALJ should have instead given great weight to the opinions of Dr. Quaempts and Dr. Fegenbaum, the ALJ reasonably concluded that those opinions were entitled to no weight. First, the ALJ noted that neither physician offered any opinion as to Plaintiff's specific functioning ability. This is not error. See 20 C.F.R. § 404.1527(d) (explaining that a physician's opinion that one is "disabled" is not a medical opinion but instead an opinion on an issue reserved for the Commissioner). Additionally, the ALJ noted

both opinions came well after Plaintiff's date last insured. Dr. Fegenbaum provided his opinion in June 2017 and Dr. Quaempts offered his opinion 18 months after Plaintiff's date last insured.[7]

As noted, the ALJ's conclusion that Plaintiff's RFC permitted her to perform sedentary work with certain additional limitations is supported by substantial evidence in the record and free of legal error. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)).[8]

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 8th day of March, 2021.

/s/ Michael J. McShane
Michael McShane
United States District Judge

---

[7] So too with the opinion of Landan Morgan, DPT, Plaintiff's physical therapist. Mr. Morgan provided his lifting capacity evaluation in August 2018, long after Plaintiff's date last insured. Along with the fact that Mr. Morgan's opinion (that Plaintiff could not lift more than one pound) conflicted with claimant's own reporting to other providers, the ALJ provided germane reasons for according Mr. Morgan's opinion little weight.

[8] Plaintiff also argues the ALJ erred in not finding Plaintiff met the listing for disorders of the spine and not finding Plaintiff suffered from fibromyalgia. These arguments are meritless. Listing 1.04A requires, among other things, motor loss with sensory or reflex loss and positive straight leg raise tests. The medical record does not demonstrate Plaintiff met this listing. To be medically determinable under the regulations, a diagnosis of fibromyalgia must be based on findings that: Plaintiff has widespread pain in all quadrants of the body for at least three months; Plaintiff exhibited 11 or more positive tender points or repeated manifestations of six or more fibromyalgia symptoms; and a rule out of other disorders that could cause the symptoms. SSR 12-2p. Although Plaintiff complained at times of chronic pain, the record is devoid of any of specific findings necessary to establish fibromyalgia as a medically determinable impairment under the regulations.